950 F.Supp. 268 (1996)
Terri L. RILL and Robert Rill, Plaintiffs,
v.
James A. TRAUTMAN, Defendant.
No. 4:95 CV 2255 DDN.
United States District Court, E.D. Missouri, Eastern Division.
November 18, 1996.
*269 Thomas C. Rich, Rich and Nalefski, P.C., Fairview Heights, IL, Thomas M. Burke, Thomas M. Burke Law Office P.C., St. Louis, MO, for plaintiffs Terri L. Rill, Robert Rill.
Nancy R. Kistler, Holtkamp and Liese, St. Louis, MO, for defendant James A. Trautman.

MEMORANDUM
NOCE, United States Magistrate Judge.
This matter is before the court upon the motion of plaintiffs for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. No. 23) and upon the motion of defendant to strike (Doc. No. 24). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(3).
Plaintiffs Terri L. Rill and Robert Rill commenced this action against defendant James A. Trautman for injuries Terri Rill sustained in an automobile accident and for resulting loss of consortium plaintiff Robert Rill suffered. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.
In their first amended complaint, plaintiffs allege that on December 15, 1993, plaintiff Terri Rill was driving her vehicle at the intersection of Olive Street and Center Parkway in St. Louis County, Missouri, when defendant James Trautman failed to stop at a stop light and struck Rill's vehicle. Count I alleges negligence. Count II alleges loss of consortium. Defendant asserts an affirmative defense of comparative fault.
Plaintiffs have moved for summary judgment, arguing that the undisputed facts show that the defendant is liable for plaintiff's injuries. The motion seeks partial summary judgment on the issue of liability, leaving for trial the issue of damages. Defendant opposes the motion and has moved to strike various exhibits submitted by plaintiffs in support of the summary judgment motion.

Motion to strike
In support of their motion for summary judgment, plaintiffs have included a copy of a Missouri Uniform Accident Report from the accident at issue (Pl.'s Exh. A), numerous pages of purported medical records of Terri Rill (Pl.'s Exh. E), and a transcript of a recorded conversation between Victor Errandi and Vicki Astudillo (Pl.'s Exh. G). Defendants move to strike these exhibits.
The motion to strike will be sustained. A court, upon a motion for summary judgment, can consider any material that would be admissible at trial. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2721, at 40 (1983). To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Federal Rule of Civil Procedure 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. Id. § 2722, at 58-60. Exhibit A, the police report, has not been authenticated and contains hearsay. Exhibit E, the medical reports, also has not been authenticated. There is no affidavit explaining their authenticity or applicability. Exhibit G is an unsworn and unsigned statement (actually a transcript of a recorded conversation) of a purported witness. It is not an affidavit, which would have been the proper way to present this information as evidence. Therefore, *270 the court will not consider these exhibits when examining the merits of plaintiffs' motion for summary judgment.

Motion for summary judgment
It is undisputed that the accident occurred on December 15, 1993, at approximately 11:30 a.m. at the intersection of Olive Street and Center Parkway. (Terri Rill Dep., Pl.'s Exh. B, at 33, 34; Trautman Dep., Pl.'s Exh. C, at 6, 16.) Terri Rill was traveling north on Center Parkway, stopped at a red light at Olive. (Pl.'s Exh. B at 34, 36.) When the light turned green, she proceeded into the intersection to make a left turn onto Olive to travel west. (Id. at 36.) As she proceeded into the intersection, she saw defendant's vehicle approaching her from the west, "on the other side of the light." (Id.) She continued to proceed through the intersection, believing that defendant's vehicle would stop at the light. (Id.) Defendant, traveling east on Olive, observed Terri Rill's vehicle in the intersection before the impact, applied his brakes, and collided with Rill's vehicle. (Pl.'s Exh. C at 6, 11, 12.) As he approached the intersection and at the time of impact, Trautman was on the telephone and did not know the color of the traffic-control signal governing his way of traffic. (Id. at 9, 10, 12, 16.) Trautman testified as follows:
Q. Okay. So as you're approaching the intersection, you're on the phone, what's the speed limit there?
A. I believe it's 35.
Q. 35. And could you give me your best estimate as to your speed as you're approaching the intersection?
A. I believe it was approximately 35.
Q. And as you are approaching the intersection, what's the last color that you saw on the light governing your way of traffic?
A. I don't remember seeing any certain color.
* * * * * *
Q. Okay. And do you know what color the light was when you went through the intersection governing
A. No, I don't.
Q. Could have been any one of the three choices that we have on the light?
A. That's correct.
Q. All right. What color was it the last time you were aware of the light?
A. I remember that the lights were there. I don't remember seeing any particular color.
Q. Okay, fine, thank you. And that would have been during the entire time you're traveling towards that intersection?
A. Correct.
Q. All right. How far away do you think you were from Mrs. Rill's vehicle when the vehicles or when you realized there was going to be an impact or was the first time you realized there was going to be an impact at the time of the accident? In other words, what I'm trying to ask is did you have any warning that this was going to happen?
A. I believe I saw her car before the impact.
Q. Okay.
A. Whether it was half a second or a couple of seconds, somewhere in that range.
Q. All right. And what would you estimate your speed to be at that time, still the same, about 35 miles an hour when you first saw her vehicle?
A. I don't know. I remember applying the brakes.
Q. Okay.
A. But I don't know if it was because I saw her or not.
Q. All right. Let me ask you this, how fast do you think you were moving at the actual time of impact?
A. Approximately 5 to 15.
Q. Okay. And did you leave any skid marks on the pavement?
A. I don't know.
Q. Okay. Did you go back to look?
A. No, I did not.
Q. Did you sound your horn prior to the impact?
A. No, I did not.
Q. Do you remember hearing any squeals of tires on the pavement immediately prior to the impact from your vehicle?

*271 A. I believe so.
Q. All right. What was Mrs. Rill doing when you noticed her vehicle or what was her car doing?
A. It was moving through the intersection.
Q. Okay. Could you tell it was attempting to make a left turn?
A. I didn't make a conscious note of that.
Q. All right. And at the time of the impact, I take it that you are still on the telephone; is that correct?
A. That's correct.
(Pl.'s Exh. C at 8-12.)
Plaintiff Terri Rill sustained injuries in the accident to her neck and head for which she received treatment. (Pl.'s Exh. B at 10-11; Pl.'s Exh. D at 5-10, 14-15, 31-33.) Plaintiff Robert Rill has been married to Terri Rill for about 20 years and they have five children. (Pl. Exh. B at 3.) Robert Rill testified that his wife's golfing and fishing activities had been curtailed as a result of the accident. (Pl.'s Exh. F at 5.) He also testified that since the accident, he and his family have "not really" taken any vacations or trips. (Id. at 5-6.)
This Court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Board of Education, Island Trees Union Free School District v. Pico, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). The moving party must initially demonstrate the absence of an issue for trial. Celotex Corporation, 477 U.S. at 323, 106 S.Ct. at 2552. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. Board of Education v. Pico, 457 U.S. at 863, 102 S.Ct. at 2806. Nevertheless, once a motion is properly made and supported, the non-moving party may not rest upon the allegations in his pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e); Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir.1984). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to produce any proof to establish an element essential to the party's case and upon which the party will bear the burden of proof at trial. Celotex Corporation, 477 U.S. at 322-24, 106 S.Ct. at 2552-53.
Jurisdiction in this action is based on diversity. Therefore, this court looks to the forum state, Missouri, and its choice of law rules to determine which body of substantive law to apply. Schoffman v. Central States Diversified, Inc., 69 F.3d 215, 219 n. 10 (8th Cir.1995). The conduct, the accident and the injury in this case occurred in Missouri. Therefore, this court must apply Missouri substantive law because Missouri has the most significant relationship to the accident and the parties. Horn v. B.A.S.S., 92 F.3d 609, 611 (8th Cir.1996).
The elements of a negligence claim in Missouri are (1) a legal duty by the defendant to conform to a certain standard of conduct to protect others against unreasonable risks, (2) a breach of that duty, (3) a proximate cause between the conduct and the resulting injury, and (4) actual damages to the plaintiff's person or property. Id. at 611.
Plaintiffs argue that defendant breached his legal duty to plaintiffs to exercise care to prevent injury to others while driving upon a public highway and that his breach was the proximate and direct cause of plaintiffs' injuries. Plaintiffs argue that there is no genuine issue of material fact as to defendant's negligence and the absence of plaintiffs' negligence.
Defendant argues that summary judgment is rarely appropriate in negligence actions and that summary judgment is never appropriate when comparative fault is alleged. Defendant argues that he is entitled to have a jury decide the issue of his negligence and that of plaintiff Terri Rill. Defendant argues that plaintiff Terri Rill's assertion as to proximate cause and her husband's loss of consortium are based on her own self-serving statements and the opinion of Dr. Feinberg, which was based on the history given to the doctor *272 by plaintiff. Defendant argues that these are issues that depend solely on the credibility of the plaintiff and plaintiff's expert, which are not properly decided on a motion for summary judgment.
The court concludes that summary judgment on the claim of defendant's negligence is appropriate. Defendant, as the operator of a motor vehicle, had a legal duty "to exercise the highest degree of care in the operation of [the vehicle] and to keep a lookout ahead and laterally ahead in the direction in which the [vehicle] is moving in order to avoid injury and damage to others." Thaller v. Skinner & Kennedy Co., 315 S.W.2d 124, 129 (Mo.1958) (en banc). To fulfill this duty, defendant "was required to look in such an observant manner as to enable him to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances." Joffe v. Beatrice Foods Co., 341 S.W.2d 880, 884 (Mo.Ct.App.1960). Defendant does not dispute Terri Rill's testimony that she had the green light. Defendant's own testimony shows that he was not being observant because he was talking on the telephone at the time of the accident and did not know the color of the traffic-control signal. Defendant's duty to exercise care in the operation of his vehicle included observation of the color of the traffic-control signal governing his way of traffic. See Hildreth v. Key, 341 S.W.2d 601, 606 (Mo.Ct.App.1960).
To determine whether proximate cause exists, the court must consider whether some injury to plaintiff was a reasonable and probable consequence of the act or omission of the defendant. Callahan v. Cardinal Glennon Hospital, 863 S.W.2d 852, 865 (Mo. 1993) (en banc). The factual record before the court is unequivocal that the continued movement of defendant's vehicle into the intersection when plaintiff was in the intersection on a green light was the proximate cause of plaintiff's injuries. It is foreseeable that talking on a telephone in an automobile while driving and not noticing the color of the traffic-control signal will result in an accident. The undisputed facts show that, absent defendant's negligent act, plaintiff Terri Rill's injuries would not have occurred. Hildreth, 341 S.W.2d at 607.
Defendant has pleaded comparative fault as an affirmative defense, alleging that plaintiff Terri Rill failed to keep a proper lookout, drove at an excessive speed, failed to yield the right of way, and failed to stop, swerve, honk her horn or otherwise take action to avoid the accident. (Def.'s Answer to Pls.' First Amended Petition, filed June 19, 1996.) Under the pure comparative fault principles adopted by Missouri in Gustafson v. Benda, 661 S.W.2d 11 (Mo.1983) (en banc), the injured party's own negligence is compared to that of the negligence of defendant to determine whether any damages awarded should be diminished in proportion to the amount of negligence attributable to that plaintiff. Cornell v. Texaco, Inc., 712 S.W.2d 680, 682 (Mo.1986) (en banc). Comparative fault is an affirmative defense in which the defendant must prove that the actions or omissions of the plaintiff contributed to the plaintiff's loss to negate or reduce the defendant's legal responsibility. Business Men's Assurance Co. v. Graham, 891 S.W.2d 438, 447 (Mo.Ct.App.1994). The parties in a negligence case have the right to have their case submitted to a jury under comparative fault principles if there exists substantial evidence, not mere speculation or conjecture, that plaintiff's conduct was a contributing cause of her damages. Hughes v. Palermo, 911 S.W.2d 673, 674 (Mo.Ct.App.1995).
Every motorist entering an intersection has a duty to exercise the highest degree of care to maintain a careful lookout both ahead and laterally. Witt v. Peterson, 310 S.W.2d 857, 860 (Mo.1958). A green light does not relieve plaintiff of this duty, nor does it confer on plaintiff an absolute right to proceed blindly into the intersection regardless of the movement of other traffic. Id. The duty of care to be exercised remains commensurate with the circumstances. Braniecki v. Mound City Yellow Cab Co., Inc., 861 S.W.2d 683, 685 (Mo.Ct.App.1993). Plaintiff Terri Rill testified in her deposition that she observed defendant's vehicle approach the intersection and that she nevertheless proceeded into the path of the defendant while assuming he would stop at the *273 light. This record is an insufficient basis upon which to determine whether summary judgment should be entered against the defendant on the issue of plaintiff's comparative fault.
Plaintiff Robert Rill has asserted a claim for loss of consortium. The spouse of an injured individual may be entitled to compensation for any damages sustained as the direct result of the injuries sustained by the injured individual. See Powell v. American Motors Corp., 834 S.W.2d 184, 188 (Mo.1992) (en banc). A cause of action for loss of consortium, while derivative of, is otherwise to be considered separate and distinct from the plaintiff spouse's action for damages. Rogers v. Bond, 880 S.W.2d 607, 609 (Mo.Ct. App.1994); Lear v. Norfolk and Western Railway Co., 815 S.W.2d 12, 14 (Mo.Ct.App. 1991). Plaintiff Robert Rill must show that he suffered damages arising out of his wife's injuries. Rogers, 880 S.W.2d at 609; Lear, 815 S.W.2d at 14. Consortium is generally defined as (1) material services, such as loss of support, and (2) sentimental elements such as loss of aid, comfort, companionship, sexual relations and the like. Manning v. Jones, 349 F.2d 992, 994 (8th Cir.1965); Helming v. Dulle, 441 S.W.2d 350, 354 (Mo.1969). The court concludes that the record is insufficient to determine the extent of loss of consortium, if any, suffered by plaintiff Robert Rill on the Count II loss of consortium claim.
In conclusion, the court will enter summary judgment in favor of plaintiffs solely on the issue of defendant's negligence as asserted in Count I. Plaintiffs continue to bear the burden of proof at trial on the extent and causation of their damages. Because the undisputed record is insufficient to exonerate plaintiff from some measure of comparative fault, the defendant must come forward at trial to prove plaintiff's conduct and the extent of her responsibility for plaintiffs' damages, if any. Plaintiff Robert Rill must prove the causation of his damages as asserted in the Count II loss of consortium claim and the extent of those damages, if any.